

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE ___SEP 12 2013___

_Madsen, C.J._

CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on Sept 12, 2013

_Susan L. Carlson, Deputy_

for Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| LAWRENCE HILL, ADAM WISE and ROBERT MILLER, on their own behalves and on behalf of all persons similarly situated,<br><br>               Petitioners,<br><br>v.<br><br>GARDA CL NORTHWEST, INC., f/k/a AT SYSTEMS, INC., a Washington corporation,<br><br>               Respondent. | NO. 87877-3<br><br>EN BANC<br><br>Filed    SEP 12 2013 |

STEPHENS, J.—Petitioners Lawrence Hill, Adam Wise, and Robert Miller (referred to collectively as "the employees") represent a class of persons who were employed by armored car company Garda CL Northwest Inc. The employees brought a wage and hour suit against Garda, citing violations of the Washington

Industrial Welfare Act (WIWA), chapter 49.12 RCW, and the Washington Minimum Wage Act (MWA), chapter 49.46 RCW. Following several months of litigation, including certification of the employee class, Garda moved to compel arbitration under the terms of a labor agreement. The trial court granted the motion to compel arbitration but ruled that the employees could arbitrate as a class. The Court of Appeals affirmed the order to compel arbitration but held that the employees must arbitrate individually notwithstanding the class certification. This case asks us to consider a number of issues arising from the motion to compel, including whether the arbitration provision is unconscionable. We hold that this arbitration clause is unconscionable and reverse the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

Garda is an armored truck company operating across Washington State. It employs drivers to pick up, transport, and deliver currency for its clients. Employees at each Garda facility in Washington are required to sign a labor agreement.[1] The agreements are negotiated between Garda and employee associations. The associations represent employees but are not unions in the traditional sense of the word. The associations do not collect dues from the employees and have no resources. Clerk's Papers (CP) at 606-07. There is little

---

[1] The Court of Appeals and occasionally the briefing refers to this agreement as a "collective bargaining agreement." This opinion does not use that nomenclature, as it implies a formalized bargaining process that was apparently not at play here.

bargaining that actually occurs in creating the agreements, and employees generally must accept whatever is offered. CP at 555, 561.

The labor agreement contains a clause regarding grievance and arbitration. The language of this clause varies little from facility to facility.[2] The employee association does not file grievances on behalf of employees because it has no funds to do so. CP at 607. Uncontroverted evidence establishes that no employee has even attempted to use the grievance process since at least 2004. CP at 571 (answer from Garda to written interrogatory regarding arbitration activity), 607 (declaration of shop steward).

On February 16, 2009, the employees in this matter filed a suit against Garda in King County Superior Court for wage and hour violations. The employees allege that they were not allowed meal and rest breaks as required by the WIWA and MWA. Garda timely answered and raised the arbitration clause in the labor agreement as an affirmative defense. Trial was set for August 2010. Throughout 2009, the parties exchanged written discovery. However, they delayed "significant investment in prosecuting and defending the case because trial was imminent in a very similar [class-action] matter, *Pellino v. Brinks*, No. 07-2-13469-7-SEA." CP at 841. No depositions occurred in 2009. A verdict for the *Pellino* class issued in

---

[2]This opinion will specify provisions that vary from agreement to agreement where it is relevant to the analysis. Otherwise it will refer to "labor agreement" in the singular.

January 2010. The parties began discussing settlement, but nothing came to fruition. A stipulated motion was filed for a new trial date of December 2010.

On March 26, 2010, the employees filed a motion for class certification. A hearing on the motion was set for July 16, 2010. On July 1, 2010, Garda filed its opposition to the motion for class certification. On the same date, it also filed a motion to compel arbitration or for summary judgment, and noted the motion hearing for August 27, 2010.

On July 23, 2010, the trial court granted the motion for class certification. Notice was thereafter sent to the 306 class members. On August 27, the court heard Garda's motion to compel arbitration or for summary judgment. It denied the summary judgment motion but ordered further briefing on the arbitration question. On September 24, 2010, the court ordered arbitration to be pursued by the class it had certified. Garda appealed the decision to allow the class to arbitrate, and the employees cross appealed the order to compel arbitration. The Court of Appeals affirmed the order to compel arbitration but reversed the trial court on the issue of class arbitration, holding that the arbitration must proceed on an individual basis. *Hill v. Garda CL N.W., Inc.*, 169 Wn. App. 685, 697, 281 P.3d 334 (2012). The Court of Appeals did not reach the employees' claim that the arbitration clause is unconscionable. *Id.* at 690. The employees filed a petition for review, which this court granted. *Hill v. Garda CL N.W., Inc.*, 176 Wn.2d 1010, 297 P.3d 706 (2013).

ISSUE

Are the terms of the arbitration clause unconscionable? [Short Answer: Yes][3]

ANALYSIS

Arbitration is a rapidly evolving dispute resolution method. The United States Supreme Court has weighed in several times in the recent past with decisions that have curtailed somewhat the ability of states to regulate arbitration processes. *See, e.g., AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011); *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009). These cases confirm an expansive interpretation of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-14, to occupy an increasingly significant role in the field of arbitration. *See Concepcion*, 131 S. Ct. at 1746-48. In Washington, we have long recognized, as we must, that arbitration is favored as a matter of policy under the FAA. *See Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 301, 103 P.3d 753 (2004).

At the same time, we have continued to recognize that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any

---

[3]Because we answer this dispositive issue in the affirmative, we do not consider the additional questions presented in this appeal. Those questions are whether Garda waived its right to compel arbitration by engaging in litigation for the months preceding its motion; whether the labor agreement clearly and unmistakably waives the employees' right to bring statutory claims in court; and, if arbitration is compulsory, whether the employees may arbitrate as a class.

dispute which he has not agreed so to submit.'" *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 810, 225 P.3d 213 (2009) (internal quotation marks omitted) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)). To that end, we have recognized our authority to decide "'gateway dispute[s].'" *Id.* at 809 (quoting *Howsam*, 537 U.S. at 83). These types of disputes go to the validity of the contract and are preserved for judicial determination, as opposed to arbitrator determination, unless the parties' agreement clearly and unmistakably provides otherwise. *See id.*; *see also Gandee v. LDL Freedom Enters., Inc.*, 176 Wn.2d 598, 293 P.3d 1197 (2013) (limiting the reach of *Concepcion*). Unconscionability is one such gateway dispute.

The employees argue that the arbitration clause in the labor agreement is unenforceable because several of its individual provisions are substantively unconscionable, namely the 14-day limitations period, 2- and 4-month limitations on back pay damages (depending on which labor agreement applies), and a cost-prohibitive fee-sharing provision. Suppl. Br. of Pet'rs at 11. We conclude that the terms of this arbitration clause are substantively unconscionable. As noted, such a holding obviates the need to consider the other questions presented by the parties.

Garda argues that this court should not review this question at all, contending that unconscionability is not a matter of substantial public concern. Suppl. Br. of Resp't at 13-14. The Court of Appeals did not rule on the question, deciding instead that the question of unconscionability did not merit discretionary

review under RAP 2.3(b)(4). *Hill,* 169 Wn. App. at 690. The question was clearly preserved, as the employees argued unconscionability before the trial court, CP at 534, 749, and raised the issue in their cross motion for discretionary review. Cross-Appellants' Opening Br. at 23-29.

We reject Garda's claim that we should not consider the employees' unconscionability argument. Unconscionability is a "gateway dispute" that courts must resolve because a party cannot be required to fulfill a bargain that should be voided. *See Zuver,* 153 Wn.2d at 302-03. Indeed, we have suggested a party must raise objections to arbitration in the trial court or on first review or risk having waived the challenge. *Id.* at 321 (declining to hear Zuver's challenges to arbitration that were not raised below or in a motion for discretionary review). When the trial court declines to compel arbitration, that decision is immediately appealable, in part because "[i]f a trial court does not compel arbitration and there is no immediate right to appeal, the party seeking arbitration must proceed through costly and lengthy litigation before having the opportunity to appeal, by which time such an appeal is too late to be effective." *Stein v. Geonerco, Inc.,* 105 Wn. App. 41, 44, 17 P.3d 1266 (2001). While we have never addressed whether the opposite is always true, similar considerations are at play. If a court compels arbitration without deciding the validity of the arbitration clause, a party may be forced to proceed through a potentially costly arbitration before having the

opportunity to appeal. This is particularly a concern where an arbitration clause imposes all or some of the costs of arbitration on the disfavored party.

Thus, *Zuver*, *Stein*, and practical considerations suggest that the employees' unconscionability argument, which was timely raised and has been fully briefed, should be decided now. We find no support in the rules of procedure or case law for the Court of Appeals' decision to compel arbitration without considering whether the arbitration clause is even valid.

Turning to the merits of the unconscionability argument, we recently considered whether an arbitration clause was unconscionable in *Gandee*, 176 Wn.2d 598. We recognized there that a term is substantively unconscionable where it is overly or monstrously harsh, is one-sided, shocks the conscience, or is exceedingly calloused. *Id.* at 603 (quoting *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 347, 103 P.3d 773 (2004)). Either substantive or procedural unconscionability is enough to void a contract. *Id.*

Our reasoning in *Gandee* controls the employees' first claim of unconscionability, that the 14-day limitations provision is unconscionable. In *Gandee*, this court held a provision unconscionable that shortened a limitation period from 4 years under the relevant statute to 30 days under the agreement. *Id.* at 606-07. We cited our holding in *Adler*, which "held a shortening of the statute of limitations from three years to 180 days to be substantively unconscionable." *Id.* at 607. Under state law, the employees would have a 3-year limitation period

to bring the type of claims they contemplate. Garda offers no basis on which to distinguish *Gandee*, and we hold that the labor agreement's 14-day limitations period is unconscionable.

The employees also argue that the two- and four-month limitations on back pay damages are substantively unconscionable under *Zuver*, 153 Wn.2d at 315-19. There we held that an employment contract that required an employee to release all rights to recover punitive or exemplary damages against her employer was unconscionable because it was unilateral and "blatantly and excessively favor[ed] the employer." *Id.* at 318. The provision at issue here does not lack mutuality in the sense that Garda retains remedies unavailable to its employees, but it is onesided in that it unfairly favors Garda by significantly curbing what an employee could recover against Garda compared to what the employee could recover under a statutory wage and hour claim. *See, e.g.*, RCW 49.46.090 (explaining that "[a]ny employer who pays any employee less than wages to which such employee is entitled under or by virtue of this chapter, shall be liable to such employee affected for *the full amount of such wage rate*, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court" (emphasis added)).

Garda argues that *Zuver* was preempted by the United States Supreme Court's ruling in *Concepcion*, 131 S. Ct. 1740. Reply Br. of Pet'r/Cross-Resp't at 41; Suppl. Br. of Resp't at 14. We rejected a similar argument in *Gandee*,

explaining that the holding in *Concepcion* invalidated any state statute that prohibited, as a general rule, provisions waiving class-action arbitration. *Gandee*, 176 Wn.2d at 609-10. As in *Gandee*, the provisions the employees claim are substantively unconscionable have nothing to do with whether they may arbitrate as a class. Thus, we hold that a limitation on back-pay damages that would otherwise be allowed is unconscionable.[4]

Finally, the employees argue that the agreement's fee-sharing provision is unconscionable because it effectively prohibits employees from bringing claims in the arbitral forum, especially given that the "unions" representing the employees have no funds to pay for arbitration. The employees cite to *Gandee* as controlling, but there the provision at issue required the loser to pay *all costs*. 176 Wn.2d at 605-06. In contrast, the provision at issue here requires that "[t]he Union and the Company shall each pay one-half (1/2) of the fee charged by the arbitrator, the cost of the hearing room, the reporter's fee, per diem, and the original copy of the transcript for the arbitrator." CP at 143. While comparatively less harsh than the provision in *Gandee*, this imposition of costs is still problematic. In *Adler*, this court considered a fee-splitting provision similar to the one at issue here. We suggested that if a party provided specific information about the arbitration fees it

---

[4] Garda argued below that the back pay provision is not really a limitation because the terms of the agreement allow the provision to be disregarded if recovery is "specifically mandated by federal or state statute or law." CP at 143. As the employees argue, this provision is prone to mischief. A specific "period of recovery" is not contemplated by the applicable statutes. Thus, there is not a satisfactory backstop to the damages limitation provision that renders it substantively fair.

would be required to share, as well as information as to why such fees would prohibit it from bringing its claims, such a showing would satisfy a party's burden to show that the fee-splitting provision is substantively unconscionable. *Adler*, 153 Wn.2d at 353 (citing *Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 467-68, 45 P.3d 594 (2002)); *see also Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234-35 (10th Cir. 1999) (striking arbitration clause because fee-sharing provision made the forum inaccessible to employee where he would have to pay for an arbitrator's services when he would not have to pay for a judge's services).

Here, the employees have presented such evidence, setting out the high costs of individual arbitration as well as the limited resources of the representative plaintiffs and the union. CP at 550, 599 (evidence of the expected arbitration costs), 600-05 (evidence of class representatives' financial status), 607 (evidence of financial status of unions). And, they offer uncontroverted evidence that no employee has availed him- or herself of the arbitration process in recent memory. CP at 571, 607. Garda offers no contrary argument other than its view that *Adler* and *Mendez* are preempted by *Concepcion*. *See* Reply Br. of Pet'r/Cross-Resp't at 40. As explained above, *Gandee* rejects an analysis of *Concepcion* that reads it broadly to preempt a finding of unconscionability on such individual terms.

In sum, the employees have identified key provisions in the arbitration agreement that are substantively unconscionable. As in *Gandee*, severing these

clauses "significantly alter[s] both the tone of the arbitration clause and the nature of the arbitration contemplated by the clause." 176 Wn.2d at 607. As in *Gandee,* here the fee-tructure and timing of the arbitration would be changed, as well as a significant provision dealing with remedies. *Id.* As in *Gandee,* "[l]ittle would be left of the arbitration 'agreed' to by the parties" here, *id.,* other than the definition of a grievance, selection of an arbitrator, and the scope of the arbitrator's powers. Thus, although courts hesitate to upset the terms of an arbitration agreement, *id.,* we must conclude, consistent with *Gandee,* that the unconscionable terms pervade this arbitration agreement and invalidate the provision. Accordingly, we hold that the arbitration clause is substantively unconscionable.

## CONCLUSION

We reverse the Court of Appeals. The arbitration clause at issue is unconscionable and therefore unenforceable. We remand for further proceedings consistent with this opinion.

_____
Stephens, J.

WE CONCUR:

_____
Madsen, C.J.

_____
J.M. Johnson

_____

_____
Wiggins, J.

_____
Owens, J.

_____
González, J.

_____
Fairhurst, J.

_____
Gordon McCloud, J.